# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Gregory A. Czech,

           Plaintiff,            **MEMORANDUM OPINION AND ORDER**

v.            Civil No. 09-1884 ADM/SRN

Unum Life Insurance Company
of America,

           Defendant.

---

Krister D. Johnson, Esq., Krister D. Johnson Law Office, St. Cloud, MN, and Alesia R. Strand, Esq., and Thomas J. Beedem, III, Esq., Beedem Law Office, Minneapolis, MN, on behalf of Plaintiff.

Terrance J. Wagener, Esq., and Molly R. Hamilton, Esq., Messerli & Kramer, PA, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On September 30, 2009, the undersigned United States District Judge heard oral argument on Defendant Unum Life Insurance Company of America's ("Unum") Motion to Dismiss [Docket No. 5]. Plaintiff Gregory A. Czech's ("Czech") Complaint alleges denial and discontinuation of disability benefits in contravention of his insurance policy with Unum. Notice of Removal [Docket No. 1], Ex. A (Compl.) ¶¶ II-VIII. For the reasons stated herein, Unum's Motion to Dismiss is granted.

## II. BACKGROUND[1]

Unum is an insurance company licensed to do business in the State of Minnesota.

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Compl. ¶ I. Czech was an insured under a disability insurance policy issued by Unum. Id. ¶ II. In February 2001, Unum approved the payment of benefits to Czech under the long-term disability policy; the approval was made retroactive to November 12, 2000, based on a disability onset date of May 16, 2000. Johnson Aff. [Docket No. 12] ¶¶ 2-4, Ex. A[2] at 2. On October 23, 2001, Unum advised Czech that it was discontinuing the payment of benefits because Czech was no longer disabled. Id., Ex. A at 2-3. On November 11, 2001, Czech appealed Unum's determination, and, on January 23, 2003, Unum affirmed its decision to discontinue benefits. Id., Ex. A at 3.

After settling with insurance regulators from several states over allegations of improper claims review processes, Unum offered Czech the opportunity to participate in a Claims Reassessment Process ("CRP"). Id., Ex. A at 3. Unum approved Czech's participation in the CRP on March 22, 2005. Id., Ex. F. During this same time period, Czech filed a motion in Unum's overpayment action to amend his pleadings to assert a counterclaim alleging that Unum breached the insurance policy when it terminated his benefits on October 23, 2001. Id., Ex. A at 3, Ex. D. That motion (hereinafter the "motion to amend") was denied, and the case was ultimately resolved by a consent judgment executed on July 29, 2005, and entered on November 10, 2005. Wagener Aff. [Docket No. 8], Ex. A at 1-3.

In response to a July 2008 letter from Czech's attorney, Unum notified Czech's attorney on August 20, 2008, that it had determined that Czech was not eligible to have his claim

---

[2] Exhibit A is a copy of an order by Magistrate Judge Raymond L. Erickson entered on April 5, 2005, in Unum v. Czech, 04-CV-109 (PAM/RLE), which was a previous lawsuit between the parties litigating Unum's claim to recover overpayment of benefits. This previous action will be referred to as the "overpayment action."

reassessed in the CRP because his "claim" had been "resolved through litigation or settlement." Parker Aff. [Docket No. 15], Ex. A. Czech initiated this action in state court on June 16, 2009, and Unum removed the matter to this Court on July 16, 2009.

### III. DISCUSSION

**A.    Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.    Res Judicata**

Unum argues that Czech's claim for the denial and discontinuation of disability benefits is barred by res judicata.[3] "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 128

---

[3] Although this action was originally filed in state court, federal law of res judicata applies since the question presented concerns the preclusive effect of a prior determination in federal court—i.e., the determination in Unum's overpayment action. See Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir. 1997).

S. Ct. 2161, 2171 (2008). "Claim preclusion" precludes a second action on a claim, or any part of a claim, that was resolved by a valid, final adjudication. Baker ex rel. Thomas v. Gen. Motors Corp., 522 U.S. 222, 233 n.5 (1998). "Issue preclusion" on the other hand, binds parties in a second action to an issue of fact or law that was actually litigated and resolved by a valid final judgment in a previous action, regardless of whether the claims in the two actions were the same. Id. Unum invokes the issue-preclusion concept of res judicata, contending that the Judge Erickson's denial in the overpayment action of Czech's motion to amend precludes Czech from raising the breach of contract claim for the discontinuation of benefits in this action. See Def.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 7] at 4-6.

Under federal law, claim preclusion bars a subsequent suit if (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based on the same claims or causes of action. Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998). There is no dispute that jurisdiction in the overpayment action was proper and that the overpayment action and this action involve the same parties, Unum and Czech. Thus, the remaining issues are whether Judge Erickson's denial of the motion to amend constitutes a "final judgment on the merits" and whether the overpayment action and this action are based on the same claims or causes of action.

Unum argues that under Eighth Circuit law, the denial of a motion to amend constitutes a final judgment on the merits for purposes of claim preclusion and, in support, cites Professional Management Associates, Inc. v. KPMG, LLP, 345 F.3d 1030 (8th Cir. 2003). There, the court held that "[t]he denial of a motion to amend a complaint in one action is a final judgment on the

4

merits barring the same complaint in a later action." Id. at 1032; see also King v. Hoover Group, Inc., 958 F.2d 219, 222-23 (8th Cir. 1992) ("Denial of leave to amend constitutes res judicata on the merits of the claims [that] were the subject of the proposed amended pleading."). In addition, the court held, "[t]his is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness." Prof'l Mgmt., 958 F.2d at 1032. Accordingly, Judge Erickson's denial in the overpayment action of Czech's motion to amend was a final judgment and on the merits.

But the inquiry does not end there. Czech's claim in this action is barred by claim preclusion only if the overpayment action and this action are based on the same claims or causes of action. The Eighth Circuit has interpreted "the same claims or causes of action" to mean "claims that arise out of the same nucleus of operative fact." Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 732 (8th Cir. 2004). Determining whether claims arise out of the same nucleus of operative facts requires consideration of whether the facts underlying each claim concern the same transaction or series of connected transactions. Poe v. John Deere Co., 695 F.2d 1103, 1106 (8th Cir. 1982). A court should make its determination "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting Restatement (Second) of Judgments § 24). "[I]n the final analysis," though, "the test would seem to be whether *the wrong for which redress is sought* is the same in both actions." Costner, 153 F.3d at 674.

Czech argues that Unum's overpayment claim and his breach of contract claim for the

5

discontinuation of disability benefits do not arise out of the same nucleus of operative facts. Pl.'s Mem. in Opp'n to Mot. to Dismiss [Docket No. 11] at 9. Czech urges that Judge Erickson previously reached this conclusion when he ruled that the factual predicate for Unum's overpayment claim, Czech's receipt of benefits from Unum while also receiving Social Security benefits, is "unrelated" to the factual predicate for Czech's breach of contract claim for the discontinuation of disability benefits, the events that lead to the termination of Czech's benefits. Johnson Aff., Ex. A at 13-14. In response, Unum argues that (1) Judge Erickson's discussion about the relation (or lack thereof) between Unum's overpayment claim and Czech's breach of contract claim for the discontinuation of benefits is merely dictum;[4] and (2) Judge Erickson's view is not "universally held." Def.'s Mem. in Supp. of Mot. to Dismiss at 5.

Although Judge Erickson's conclusion about the relationship of the claims is dictum in the sense that it was not necessary to the decision on the motion, it does represent a judgment "on a question that [was] directly involved, briefed, and argued by counsel, and even passed on by the court, but that [was] not essential to the decision." See Cerro Metal Prods. v. Marshall, 620 F.2d 964, 978 n.39 (3d Cir. 1980). Such "judicial dictum" is generally accorded more weight than "obiter dictum," which refers to "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision." Black's Law Dictionary 1102 (8th ed. 2004). Furthermore, Judge Erickson's analysis is correct. As Judge Erickson reasoned, Unum's termination of Czech's benefits is "unrelated to his allegedly having simultaneously received Social Security benefits" because Unum's claim and Czech's claim "involve different

---

[4] In his April 25, 2005 order, before considering the relatedness of the claims, Judge Erickson denied Czech's motion to amend for the independent reason that he failed to show "good cause" as required by Federal Rule of Civil Procedure 16.

6

sets of facts, and different legal determinations, and accordingly, adjudication of [Unum's] claim would not bar [Czech's] counterclaim under the doctrine of res judicata." Johnson Aff., Ex. A at 14 n.4.

Unum's argument that Judge Erickson's view of the relationship between its overpayment claim and Czech's breach of contract claim is not "universally held" is also rejected. The cases cited by Unum do not stand for the proposition that a claim for overpayment and a breach of contract claim for discontinued benefits arise out of the same nucleus of operative facts. In Greig v. Metropolitan Life Insurance Co., 980 F. Supp. 169, 170 (W.D. Va. 1997), an insured filed suit seeking a declaratory judgment that he was not required to reimburse a retirement plan for alleged overpayment. The plan's counterclaim that it was entitled to reimbursement for overpayment plainly was compulsory and arose out of the same nucleus of operative facts; the employee's claim and the plan's counterclaim were simply flip-sides of the same coin and applied to the same payments. Similarly, in Lessard v. Metropolitan Life Insurance Co., 103 F.R.D. 608, 610 (D. Me. 1984), the plaintiffs filed suit seeking to recover benefits that had "either been withheld or recouped" by the plan as a result of the plaintiffs having received Social Security payments, and the plan asserted counterclaims that it was entitled to the overpayments. Here Unum's claim for overpayment is for payments to Czech through October 23, 2001; Czech's breach of contract claim relates to payments he claims he was entitled to but did not receive beginning on October 23, 2001. Quite simply, Unum's claim and Czech's claim relate to two different types and periods of benefits and seek to redress different wrongs. See Costner, 153 F.3d at 674.

Although Judge Erickson's denial in the overpayment action of Czech's motion to amend

7

is a final adjudication on the merits, the prior overpayment suit and the instant suit are not based on the same claims or causes of action. Therefore, Czech's claim is not barred by the doctrine of claim preclusion.

**C.     Statute of Limitations**

Unum next argues that Czech's claim is time barred. Because ERISA contains no statute of limitations, courts must "borrow" the statute of limitations from the most analogous state law. Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 828 (8th Cir. 2000). Courts in this circuit have found Minnesota's two-year statute of limitations in contract actions for unpaid benefits to be the most analogous state law. See id.; Abdel v. U.S. Bancorp, 457 F.3d 877, 880 (8th Cir. 2006). Parties to a contract, however, "are free to adopt a contractual limitations period that differs from the relevant statute of limitations, provided the limitations period is reasonable." Hillstrom v. Kenefick, No. Civ. 04-3820, 2004 WL 2823222, at *4 (D. Minn. Dec. 9, 2004). Here, the disability insurance includes a three-year limitations provision. Diebold Aff. [Docket No. 9], Ex. A (Disability Insurance Policy) § VI.H.2. Such three-year contractual limitations periods have been found reasonable in ERISA cases, Hillstrom, 2004 WL 2823222, at *4, and the parties do not argue otherwise. Accordingly, the three-year limitations period in the disability insurance policy applies.

The commencement of the limitations period—the time when the claim accrues—is determined by federal common law. Abdel, 457 F.3d at 880. Federal common law adheres to the "discovery rule" to determine when the statute of limitations begins to run, and, therefore, in an ERISA action, "the general rule . . . is that a cause of action accrues after a claim for benefits has been made and has been formally denied." Hillstrom, 2004 WL 2823222, at *5 (quotation

8

omitted) (omission in original).  Unum argues, however, that the terms of the disability insurance policy should control the accrual date.  Under the policy, Czech was required to bring an action to recover benefits within three years from the time proof of claim was required, which was no later than one year after the 180-day elimination period.  Thus, Unum concludes, the three-year limitations period began to run one year and 180 days after Czech's May 16, 2000 disability onset date, and the limitations period expired on November 12, 2004.

The Court disagrees.  A claim accrues when there is a "repudiation by the fiduciary [that] is clear and made known to the beneficiary," notwithstanding the fact that the policy provides that the limitations period "starts to run when 'written proof of loss is required to be furnished.'" Wilkins v. Hartford Life & Acc. Ins. Co., 299 F.3d 945, 948-49 (8th Cir. 2002); see also White v. Sun Life Assurance Co. of Canada, 488 F.3d 240, 246 (4th Cir. 2007) (stating that the Fourth Circuit's rule that an ERISA cause of action "does not accrue until a claim of benefits has been made and formally denied," even when the policy specifies an earlier accrual date, is in accordance with the Fifth, Sixth, Seventh, Eighth, and Ninth Circuits).  But see Rice v. Jefferson Pilot Fin. Ins. Co., 578 F.3d 450, 455-56 (6th Cir. 2009) (disagreeing with the Eighth Circuit's decision in Wilkins and holding that parties are free to contract for the date on which an ERISA claim accrues, so long as the contractual accrual date is reasonable).  The rule that the accrual date is determined by a plan's clear repudiation of benefits despite provisions in the policy indicating a contrary accrual date is well founded.  As one court has explained, the accrual rule applies "even when a benefit plan prescribes a different accrual date, such as when the proof of loss is required to be furnished, because to hold otherwise would allow an insurer to simply bury a denial of coverage and wait for the statute of limitations to run."  Micciche v. Kemper Nat'l

9

Servs., 560 F. Supp. 2d 204, 212 (E.D.N.Y. 2008) (quotations omitted).

Czech contends that his cause of action accrued on January 23, 2003, when his appeal of the termination of his disability benefits concluded with Unum affirming its decision. The Eighth Circuit "has not definitively ruled on whether an ERISA claim accrues at the time of the initial denial or after timely exhaustion of administrative remedies under the plan." Forciea v. Fortis Benefits Ins. Co., No. 08-CV-2219, 2009 WL 2925524, at *3 (D. Minn. Sept. 8, 2009). But as the court in Forciea noted, the Eighth Circuit in Abdel seemed to favor applying the accrual date most favorable to the plaintiff. Id. Following the Eighth Circuit's lead in Abdel, the Court holds that the conclusion of Czech's appeal on January 23, 2003, marks the date on which Czech's claim accrued and the limitations period began to run.

Although conceding more than three years passed between January 23, 2003, and the initiation of this action on June 16, 2009, Czech maintains that the limitations period was tolled during much of that time. Specifically, Czech contends that the limitations period was tolled beginning on March 22, 2005, when he received a letter from Unum informing him that his participation in the CRP had been approved. Czech emphasizes that a prior letter received on January 19, 2005, assured him that if he participated in the CRP, "any applicable statute of limitations will be tolled during the pendency of the reassessment process." Johnson Aff., Ex. A(b) at 14. Czech avers that "[t]o date, [he] has not received any further communication regarding his status in the [CRP] nor has Unum issued any decision in that regard." Pl.'s Mem. in Opp'n to Mot. to Dismiss at 11. Thus, Czech concludes, only two years and two months (January 23, 2003 to March 22, 2005) of the three-year limitations period had run when he initiated this action.

Unum argues that the limitations period had already expired before Czech's participation in the CRP was approved. That argument, however, hinges on Unum's incorrect contention of the accrual date, which was discussed previously. Unum next argues that Czech's participation in the CRP did not toll the limitations period because the settlement that Unum entered into with the insurance regulators, which required Unum to establish the CRP, provides that it is not "a waiver . . . of any applicable defenses, including . . . any applicable statute of limitations." Johnson Aff. Ex. E (Regulatory Settlement Agreement) §§ B(2), C(11).

Unum's preservation of defenses in its regulatory settlement, including a statute of limitations defense, is irrelevant to whether the acceptance of Czech into the CRP tolled any applicable statute of limitations. The January 19, 2005 letter clearly stated that "any applicable statute of limitations will be tolled during the pendency of the reassessment process." No evidence has been proffered that the settlement agreement with the insurance regulators or any other document in the record trumps the January 19, 2005 letter sent to Czech.

Finally, Unum argues that another provision in the settlement agreement with the regulators clarifies that if a participant in the CRP has pending litigation against Unum and a final verdict or judgment is entered in the litigation prior to the completion of the reassessment process, Unum's obligation to conduct and complete the reassessment ceases. Regulatory Settlement Agreement § B(4)(d). The January 19, 2005 letter contains similar language:

> If you have already commenced legal action relating to your prior claim(s) decision . . . [and] you decide to participate in the reassessment, you will need to agree to take such action as is necessary to seek to stay such litigation pending the outcome of the reassessment process. If the court does not agree to a stay and a final verdict or judgment is entered prior to completion of the reassessment, [Unum] will have no further obligation to reassess your claim.

11

Johnson Aff., Ex. A(b) at 13. Unum contends that Judge Erickson's April 21, 2005 denial of Czech's motion to amend in the overpayment action and the subsequent consent judgment executed on July 29, 2005, and entered on November 10, 2005, constitute the entry of a final judgment. Pursuant to the disclosure in the January 19, 2005 letter, Unum had no further obligation to conduct or complete Czech's reassessment upon entry of a final judgment. Therefore, the limitations period resumed on November 10, 2005, at the very latest, and it expired just over ten months later, more than two and a half years before Czech initiated this action on June 16, 2009.

The Court finds this argument by Unum to be both viable and fatal to Czech's claim. The January 19, 2005 letter clearly notified Czech that any applicable statute of limitations would be tolled during the pendency of the reassessment and that the reassessment would be terminated upon the entry of a final judgment. As noted in the previous discussion of claim preclusion, Judge Erickson's denial of Czech's motion to amend constitutes a final judgment. Czech chose to wait almost four years after that judgment before he initiated this action. Czech's offered justification that he never received written confirmation from Unum that the reassessment had been terminated is unpersuasive. He was notified by the January 19, 2005 letter that the entry of a final judgment would terminate the reassessment. And when Unum confirmed Czech's participation in the CRP in March 2005, he was advised that reassessment could take approximately 24 months. However, Czech allowed four years to pass without filing suit to protect his claimed rights.

In short, Czech's claim is untimely.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Unum's Motion to Dismiss [Docket No. 5] is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 15, 2009.